UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES MULLEN and KARL SCHMIDT,

                      Plaintiffs,

   -v-                                      5:10-CV-1110

THE CITY OF SYRACUSE; STEPHANIE A.
MINER, in her individual and official capacity
as Mayor of The City of Syracuse; FRANK L.
FOWLER, in his individual and official
capacity as Chief of Police for The City of
Syracuse; JUDY CULETON, in her individual
and official capacity as Director of the Human
Resources Division of the Syracuse Police
Department; MATTHEW DRISCOLL, in his
individual capacity as former Mayor of The
City of Syracuse; GARY MIGUEL, in his
individual capacity as former Chief of Police
for the City of Syracuse; SERGEANT
RICHARD PERRIN, in his individual & official
capacity as an Officer with the Human
Resources Division of the Syracuse Police
Department; and POMCO GROUP, individually
and as an agent for The City of Syracuse
a/k/a POMCO, Inc.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                       OF COUNSEL:

BOSMAN LAW OFFICE            A.J. BOSMAN, ESQ.
Attorney for Plaintiffs
6599 Martin Street
Rome, NY  13440

CITY OF SYRACUSE LAW DEPARTMENT    SHANNON T. O'CONNOR, ESQ.
Attorneys for Defendants the City of Syracuse,
   Miner, Fowler, and Culeton
233 East Washington Street
300 City Hall
Syracuse, NY  13202

COUGHLIN & GERHART, LLP                    MARY LOUISE CONROW, ESQ.
Attorneys for Defendants the City of Syracuse,
   Miner, Fowler, Culeton, Driscoll, Miguel, and
   Perrin
P.O. Box 2039
Binghamton, NY  13902

HISCOCK & BARCLAY, LLP                     ROBERT A. BARRER, ESQ.
Attorneys for Defendant POMCO Group
One Park Place
300 South State Street
Syracuse, NY  13202


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On September 16, 2010, plaintiffs James Mullen ("Mullen")[1] and Karl Schmidt

("Schmidt") (collectively "plaintiffs"), disabled and retired Syracuse police officers,

commenced this action against the City of Syracuse ("the City"); Stephanie Miner, Mayor of

the City ("Mayor Miner"); Frank Fowler, Chief of Police for the City ("Chief Fowler"); Captain

Judy Culeton, Director of Human Resources for the Syracuse Police Department ("Capt.

Culeton"); Matthew Driscoll, former Mayor of the City ("Mayor Driscoll"); Gary Miguel, former

Chief of Police for the City ("Chief Miguel"); Sgt. Richard Perrin ("Sgt. Perrin"); and the

POMCO Group ("POMCO").  This action arises from a policy change made by the City in

September 2009 that allegedly impacted plaintiffs' access to continued medical care and

benefits guaranteed by New York state law.

On January 13, 2011, a Memorandum–Decision and Order was filed denying

---

[1]  James Mullen has reportedly changed his name to "J.C. Mullen" since the inception of this action.

defendants' motion to dismiss the complaint and granting plaintiffs' cross-motion to file an amended complaint.  Mullen v. City of Syracuse, 2011 WL 111872 (N.D.N.Y. Jan. 13, 2011).  Plaintiffs filed an amended complaint on January 28, 2011.  ECF No. 25.  On August 1, 2011, after defendants answered the amended complaint, plaintiffs requested leave to file a second amended complaint.  ECF No. 37.  On September 21, 2011, the Hon. David E. Peebles, United States Magistrate Judge, granted that motion "with great reservation and great reluctance."  Sept. 21, 2011, Hr'g Tr., ECF No. 58, 31:2–3.[2]

On September 29, 2011, plaintiffs filed a second amended complaint in which they delineate a total of seven causes of action including a procedural due process claim (First and Second Causes of Action); a substantive due process claim (Third Cause of Action); an equal protection claim (Fourth Cause of Action); an alleged violation of the Ninth Amendment to the United States Constitution (Fifth Cause of Action); an alleged violation of the right to choose medical care guaranteed by the New York state constitution (Sixth Cause of Action); and a § 1983 conspiracy claim (Seventh Cause of Action).[3]  ECF No. 51.

The parties have completed extensive discovery.  On February 28, 2013, POMCO and the Syracuse defendants[4] each filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF Nos. 91, 92.  Beginning on March 29, 2013, plaintiffs filed late responses to both motions.  ECF Nos. 108–113, 116–140.  Defendants have replied.

---

[2]  The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to the docket and exhibits.

[3]  The federal causes of action are brought pursuant to 42 U.S.C. § 1983.  Plaintiffs do not specify against whom each cause of action is asserted.

[4]  The Syracuse defendants include the City, Mayor Miner, Chief Fowler, Capt. Culeton, Mayor Driscoll, Chief Miguel, and Sgt. Perrin.

ECF Nos. 145, 147.  The motions were considered on submit without oral argument.[5]

## II. **FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are undisputed.  Mayor Driscoll was the mayor of the City from July 2001 through December 31, 2009.  In 2005, he appointed Chief Miguel to head the Syracuse Police Department.  Mayor Miner took office on January 1, 2010, at which time she appointed Chief Fowler to replace Chief Miguel.  The mayor oversees all City departments, including the police department.  The chief of police supervises the officers within the department and is responsible for the implementation of department policies.  Capt. Culeton supervised the Human Resources Division at the police department from 2005 through September 2012.

Mullen and Schmidt were injured during the performance of their duties as Syracuse police officers.  As a result of their injuries, they are permanently disabled and require ongoing medical care.  They accepted disability retirements prior to the relevant time period.

The City does not participate in the state workers' compensation program and is instead self-insured.  New York General Municipal Law section 207-c requires a municipality to pay all medical expenses for police officers who have been injured on the job, even after they retire.  The City is thus obligated to pay for plaintiffs' full medical care necessitated by their work-related injuries.[6]  Payments for plaintiffs' medical expenses are—at least initially— processed internally by the Medical Section of the police department's Human Resources

---

[5]  The motions were originally scheduled for oral argument on April 12, 2013.  However, plaintiffs' counsel's failure to file responsive papers in a timely fashion, despite being granted an extension of time to do so, prompted an extension of time for defendants' reply and resulted in the motions being considered on submit without oral argument.

[6]  Plaintiffs also have retiree health insurance through the City, and Mullen receives Medicare.

Division, primarily by Sgt. Perrin under the supervision of Capt. Culeton.  Sgt. Perrin replaced

Sgt. Susan Adams ("Sgt. Adams") after she retired.

When the Medical Section receives a bill for medical services that are clearly related

to an on-the-job injury, that bill is immediately approved for payment.  If, however, a service

is not clearly necessary and/or related to an injury sustained by an officer during the course

of his or her duties, then an independent medical examination ("IME") may be requested to

make such a determination before the payment is approved.

In April 2008 the City entered into a three-year consulting agreement with POMCO—a

private New York corporation and third-party benefits administrator.[7]  Plaintiffs allege that in

2009 the City, at POMCO's urging, enacted a new policy through which payments for section

207-c medical expenses were reduced to mirror the rates of the state workers' compensation

program.[8]  Plaintiffs were not provided with notice or an opportunity to challenge the policy

change prior to its implementation.  This new policy has allegedly caused a reduction in

plaintiffs' access to medical treatment and prompted some providers to discontinue care.

Specifically, Schmidt alleges that, in May 2009, defendants reduced the rate paid for

his massage therapy, and he was advised that he can only seek physical therapy with prior

authorization from the City.  He was also allegedly threatened with the loss of his 207-c

benefits unless he submitted to an IME.  Schmidt notes that his providers "reluctantly

continue" to treat him with the expectation of future compensation in full.  Schmidt

Affirmation, ECF No. 109-1, ¶ 11.

---

[7] This agreement was subsequently extended to March 31, 2013.

[8] Defendants maintain that the City utilized the workers' compensation fee schedule well before POMCO became involved with the City.

Mullen reports that, also in May 2009, defendants reduced the rate of payments made to his pain management doctor.  His massage therapy was discontinued thereafter, causing him to suffer constant pain.  On September 23, 2009, Sgt. Adams sent him a letter advising that the system of paying section 207-c benefits "has changed."  Mullen Affirmation, Ex. C, ECF No. 108 ("Sgt. Adams Letter").  This letter further advised that the City would only pay for Mullen to receive massage therapy from a licensed physical therapist, occupational therapist, or a medical doctor.

In October 2010, the City retained POMCO to oversee and process the payment of section 207-c medical benefits.  POMCO continues to utilize the workers' compensation fee schedule.  POMCO maintains that when a provider objects to the workers' compensation rate, it negotiates a rate instead.  Plaintiffs allege that POMCO refuses to negotiate and only pays the workers' compensation rate, causing some providers to discontinue care.  They further claim that POMCO profits from denied care, but POMCO asserts that it merely receives twenty-five percent (25%) of any savings realized from negotiating a lesser rate with a provider.

## III. <u>DISCUSSION</u>

Defendants seek summary judgment on all causes of action for various reasons detailed below.[9]

---

[9] As an initial matter, defendants make the blanket assertion that they are entitled to summary judgment on all claims because there is no evidence that any policy change actually occurred in 2009.  This is without merit.  Plaintiffs have identified changes in the payment amounts made to specific providers.  Moreover, the September 23, 2009, letter sent to Mullen from Sgt. Adams specifically notes:  "Our system of paying job related injures [sic] for all police officers retired and present has changed.  The Department is now lining up with the requirement with the State Of New York Workers' Compensation Medical Fee Schedule."  Sgt. Adams Letter.

### A. Motion for Summary Judgment—Legal Standard

POMCO and the Syracuse defendants have each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record

reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."
Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also
Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when
"there can be but one reasonable conclusion as to the verdict").

### B. State Action of POMCO

Plaintiffs make two general allegations against POMCO:  (1) that it profits from the
denial of medical benefits and payments to plaintiffs' providers[10]; and (2) that it has a role in
deciding whether and what kind of medical care plaintiffs receive.  POMCO denies both
allegations and argues that it is not a state actor for purposes of the § 1983 claims.

Plaintiffs asserting claims pursuant to § 1983 for alleged violations of rights
guaranteed by the United States Constitution must show state action.  Fabrikant v. French,
691 F.3d 193, 206 (2d Cir. 2012).  This requires both an alleged constitutional deprivation
caused by acts taken pursuant to state law and a showing that "the party charged with the
deprivation [is] a person who may fairly be said to be a state actor."  Id. (internal quotation
marks omitted).  Even ostensibly private conduct "may become so entwined with
governmental policies or so impregnated with a governmental character that it can be
regarded as governmental action."  Id. (internal quotation marks omitted).  This is so when
there is "such a close nexus between the state and the challenged action that the state is

---

[10]  After conducting a preliminary injunction hearing in the related Vassenelli matter, Judge Peebles
issued a Report–Recommendation in which he found this allegation to be without merit.  See Vassenelli v.
City of Syracuse, No. 5:10-CV-1422, 2012 WL 716187, at *3 (N.D.N.Y. Jan. 30, 2012), adopted, 2012 WL
715183 (N.D.N.Y. Mar. 5, 2012).  The evidence instead showed that when POMCO negotiates a lesser rate
with a provider than the workers' compensation rate, it earns a percentage of the savings.  POMCO does not
recover a percentage of payments that are denied.

responsible for the specific conduct of which the plaintiff complains." Id. at 207 (internal quotation marks and alteration omitted).  The fundamental inquiry is whether the private party's conduct is "fairly attributable to the state." Id.

POMCO relies on American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 119 S. Ct. 977 (1999), to support its argument that a private insurance company providing workers' compensation pursuant to state law is not a state actor.  In Sullivan, the private insurer—not the state—made the ultimate decision to withhold payment for disputed medical treatment.  Id. at 51–52, 119 S. Ct. at 986.  The Court held that the decision of a private insurer is not fairly attributable to the state to establish state action for § 1983 purposes.  Id. at 52, 119 S. Ct. at 986 (noting that the state neither compelled nor was directly involved in the decision to challenge a medical expense).

Here, however, POMCO itself asserts that the decision to challenge a medical expense, request an IME, or to grant or deny specific medical benefits ultimately resides with the City.  In fact, POMCO maintains that it was the City's decision to utilize workers' compensation rates for section 207-c payments and asserts that its role "is limited to auditing medical bills and processing payments" authorized by the City.  POMCO's Mem. of Law, ECF No. 91-4, 12.  In his January 2012 Report–Recommendation in the related Vassenelli case, Judge Peebles noted that POMCO's case managers make recommendations to the City regarding medical payments, but POMCO does not have final authority over which medical services are approved for payment.  Vassenelli, 2012 WL 716187, at *2–3.

The now more fully developed record supports this conclusion.  Sgt. Perrin and David Barrette, who supervised the Medical Section in his capacity as First Deputy Chief of the

Syracuse Police Department, testified about how section 207-c payments are processed. They reported that when a bill for medical care is received by the police department, the Medical Section must determine whether the care is causally related to an injury suffered on the job.  If the injury is clearly related, the bill is paid immediately.  If there is a question about causality, the matter may be reviewed by supervisors and/or referred to a doctor for an IME. During her deposition, Capt. Culeton advised that she typically made the determination as to whether an injured officer was referred for an IME.

According to these Syracuse Police Department employees, all of whom have participated directly in the processing of section 207-c payments during their careers, the City ultimately determines whether the medical care is necessitated by an on-the-job injury.  As stated by Sgt. Perrin, "after the bills are authorized, then they're sent over to POMCO" for payment.  Perrin Dep. Tr., Conrow Decl., Ex. G, ECF No. 92-9, 21:20–21.  POMCO then processes the payment and may seek to utilize the workers' compensation fee schedule or negotiate a different rate with the provider.

In short, there is sufficient evidence in the record to establish that POMCO's payment of section 207-c benefits is so entwined with the City's processing of the claims that POMCO's conduct is fairly attributable to the state, making it a state actor for purposes of § 1983.  Accordingly, POMCO's motion for summary judgment will be denied insofar as it asserts a lack of state action.

### C. __Procedural Due Process Claim—(First and Second Causes of Action)__

Defendants argue that they are entitled to summary judgment on the procedural due process claim because plaintiffs do not have a cognizable property interest in all requested

medical treatment, appropriate post-deprivation relief was available through an Article 78 proceeding, and neither plaintiff has actually been deprived of any medical care guaranteed by section 207-c.

## 1. **Property Interest**

Defendants' attempt to frame the property interest at issue mischaracterizes plaintiffs' claim.  They specifically allege that the policy change interrupted their access to ongoing care that had already been deemed medically necessary and related to their on-the-job injuries.  See Pls.' Mem. of Law, ECF No. 138, 10 ("Plaintiff [sic] in the instant matter complains of the termination of medical treatment which had already been deemed related and necessary by Defendants.").[11]

A municipality "shall be liable for all medical treatment and hospital care necessitated by reason of [job-related] injury or illness."  N.Y. Gen. Mun. Law § 207-c(1).  It follows that an employee does not have a property interest in section 207-c medical benefits until the treatment is deemed medically necessary and related to his on-the-job injury.  See Sullivan, 526 U.S. at 60–61, 119 S. Ct. at 990 (involving a Pennsylvania state law with similar language).  Once this threshold is established, the benefits cannot be taken away without appropriate due process.  Id. at 59, 119 S. Ct. at 989.

It is undisputed that plaintiffs qualified for and were already receiving section 207-c

---

[11] However, only two pages later, plaintiffs seek to broaden the property interest to include the full payment their providers charge for care, regardless of the impact on their access to treatment.  See id. at 12 ("Whether Plaintiffs continue to receive treatment is irrelevant because their property interest lies in the payment of medical treatment and care, not the treatment and care itself.").  This argument is unpersuasive. As detailed below, the property interest that arises from section 207-c is the access to medical care related to on-the-job injuries.  The City, and/or POMCO as the benefits administrator, may attempt to reduce the payments in the interest of fiscal economy so long as plaintiffs' access to medical care is not terminated.

benefits when the policy change took place in 2009.  These benefits are clearly created by state law and constitute a protected property interest.  See Russell v. Dunston, 896 F.2d 664, 668–69 (2d Cir. 1990) ("The entitlement to disability retirement is a constitutionally protected property interest."); DeMasi v. Benefico, 567 F. Supp. 2d 449, 454 (S.D.N.Y. 2008) ("it is well established under New York law" that a person receiving benefits per section 207-c enjoys a property interest).

Therefore, to the extent Mullen and Schmidt claim the policy change deprived them of access to care that had already been deemed medically necessary and related to their on-the-job injuries, such implicates a protected property interest.  However, defendants are correct that they may withhold payment for new treatment pending an IME to determine whether the treatment is medically necessary and related to plaintiffs' on-the-job injuries.  In re DePoalo v. Cnty. of Schenectady, 85 N.Y.2d 527, 531 (1995) ("General Municipal Law § 207-c authorizes a municipality to direct an applicant to undergo a medical examination to provide information upon which the municipality may make a determination that an injury or illness occurred in the performance of duty prior to the awarding of benefits.").[12]

## 2.  **Post-Deprivation Relief**

Defendants next argue that the availability of a post-deprivation Article 78 proceeding satisfies due process requirements—an argument that was made, and rejected, in their

---

[12]  The parties seem to agree that such a distinction exists.  They dispute, however, whether the City may require plaintiffs to submit to periodic IMEs to ensure that ongoing care, which has been deemed necessary and related to their disabling injuries, remains necessary and so related.  The wording of section 207-c and its legislative intent counsels in favor of permitting periodic IMEs.  See id. at 533 (discussing legislative history and concluding that section 207-c "should be construed to protect municipalities from fraudulent or unworthy claims").  Moreover, common sense dictates that an IME would be a standard part of any due process afforded prior to terminating ongoing section 207-c benefits.

motion to dismiss.  See Mullen v. City of Syracuse, 2011 WL 111872, at *2–3 (N.D.N.Y. Jan. 13, 2011).

An adequate post-deprivation remedy only constitutes sufficient due process where the deprivation was unpredictable, a pre-deprivation process was impossible, and the officials' conduct was truly "unauthorized."  Zinermon v. Burch, 494 U.S. 113, 136–38, 110 S. Ct. 975, 989–90 (1990); see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (a meaningful post-deprivation remedy satisfies due process where the deprivation was caused by random, unauthorized acts of state employees but not where the deprivation resulted from established state procedures).  "In situations where a government actor is acting pursuant to established state regulation, and therefore the act is a foreseeable result, some minimal pre-termination proceeding is required."  DeMasi, 567 F. Supp. 2d at 455; see also Russell, 896 F.2d at 668–69 (rejecting defendants' assertion that an Article 78 proceeding provides an adequate post-deprivation remedy).

The policy change was not random or unauthorized.  It was foreseeable that reducing the rate of payment for medical expenses of retired, disabled employees may cut off access to ongoing medical care.  Defendants do not argue that there was a need for prompt action or that pre-deprivation process was impossible.  Therefore, a post-deprivation Article 78 proceeding is insufficient due process.  See O'Neill v. Johnson, No. 94–CV–1210, 1996 WL 650675, at *9 (N.D.N.Y. Nov. 5, 1996) (McAvoy, C.J.) (plaintiff, who established that he qualified for section 207–c benefits, "was entitled to a meaningful hearing prior to the termination/suspension of those benefits").

In sum, plaintiffs do not have a property interest in medical services until such services

have been deemed necessary and related to their disabling injuries.  Once that determination

has been made, the access to such services may not be cut off without appropriate pre-

termination due process.  Any complaints they have regarding the City's initial determination

that a service is not medically necessary or related to their injuries should be resolved in an

Article 78 proceeding, not through a federal procedural due process claim.

### 3.  <u>Actual Deprivation</u>

Finally, defendants argue that despite the change in policy, neither Mullen nor Schmidt

have been deprived of access to any medical care necessitated by their disabling injuries.

Schmidt tacitly concedes this fact, but Mullen claims that some of his treatment has been

interrupted as a result of the 2009 policy change.

It is undisputed that plaintiffs are disabled and qualify for section 207-c benefits, a

determination that has not been disturbed.  It is equally clear that none of their ongoing

medical care has been discontinued as a result of a decision by defendants that such care is

no longer necessary or related to an on-the-job injury.  On the other hand, defendants do not

dispute that the amount paid to some of plaintiffs' medical providers, such as their

chiropractors and massage therapists, has been reduced.  The dispositive issue, therefore, is

whether this reduction in payment has effectively cut off plaintiffs' access to the medical

benefits guaranteed by section 207-c.

Schmidt acknowledges that his healthcare providers "reluctantly continue" to provide

medical care.  Schmidt Affirmation, ECF No. 109-1, ¶ 11.  During his deposition, he reported

that his chiropractor, Dr. Michael Lentini, has not stopped treating him despite the reduction

in payment rate.  In fact, when asked "if there was a doctor that you went to see who

specifically refused to treat you based upon a denial from the City?" Schmidt replied: "No, I continue to see Dr. Lentini." Schmidt Dep. Tr., Conrow Decl., Ex. K, ECF No. 92-13, 12:3–8. He noted that his massage therapy with Kimberly Lentini has continued uninterrupted as well. He similarly confirmed that his treating physician, Dr. Richard DiStefano, has never refused to treat him because of the change in payment rate. Although Schmidt reported that his physical therapy was interrupted, he could not recall the name of his physical therapist, when the treatment was discontinued, or why it was discontinued. Moreover, at his November 2012 deposition, Schmidt advised that he expects to restart physical therapy in the near future.

Mullen alleges that defendants have discontinued his massage therapy. In support of this assertion, he points to a September 15, 2009, letter from Sgt. Adams to McGregor Chiropractic & Massage. See Mullen Affirmation, ECF No. 108, ¶ 6. However, there is nothing in this letter that terminates Mullen's massage therapy or denies the City's obligation to pay for same. It instead implored the provider to utilize the proper billing codes affiliated with the workers' compensation fee schedule "so that his bills will be paid in a timely fashion." Mullen Affirmation, Ex. B, ECF No. 108, 7. Further, Sgt. Adams's September 23, 2009, letter advised Mullen that the outstanding bills from McGregor Chiropractic & Massage would be paid.

Mullen further noted that after receiving the September 23, 2009, letter—which noted that the City would only pay for him to receive massage therapy from a licensed physical therapist, occupational therapist, or a medical doctor—he tried unsuccessfully to locate a suitable provider near his residence in Florida. However, this is not tantamount to a

discontinuation of necessary medical services.  Defendants have never refused to pay for

Mullen's massage therapy; they have instead required him to receive services from a

licensed practitioner and requested that the provider utilize proper billing codes to ensure

prompt payment.

Finally, during his deposition, Mullen testified that his doctors only prescribe pain

medication because they know other services, such as physical and massage therapy, will

not be paid for.  Again, there is no documentation in the record showing that defendants

have refused to pay for any necessary medical services that have been deemed causally

related to Mullen's on-the-job injuries.  The record evidences an effort on defendants' part to

reduce the costs associated with such services, not to cut off plaintiffs' access to care.

In short, plaintiffs point to evidence indicating that defendants have reduced the

amount they pay some of their medical providers, required the providers to utilize billing

codes from the workers' compensation fee schedules, and required plaintiffs to receive care

from providers with certain licenses.  However, they fail to demonstrate that defendants have

actually cut off their access to any necessary medical care related to their on-the-job injuries,

as guaranteed under section 207-c.  Therefore, no reasonable jury could find that their

procedural due process rights have been violated.

Accordingly, defendants' motion for summary judgment will be granted with respect to

the procedural due process claim (First and Second Causes of Action), and this claim will be

dismissed.

### D.  <u>Substantive Due Process Claim—(Third Cause of Action)</u>

Plaintiffs allege that defendants have deprived them of their fundamental right to

- 16 -

receive medical care and make decisions regarding their medical treatment without interference.  Defendants argue that they are entitled to summary judgment on this claim because the right to choose one's own medical care and providers is not the type of fundamental right contemplated by substantive due process case law.  In the alternative, they assert that their conduct was not conscience-shocking.[13]

In order to sustain a substantive due process claim, plaintiffs must demonstrate that they were deprived of a fundamental constitutional right by government action that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted).  Although there is no definitive scale upon which to measure the outrageousness of governmental action, "abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience." Id. at 94 (internal quotation marks omitted).

Even assuming, arguendo, that choosing one's own medical care and providers is a fundamental right contemplated by substantive due process case law and implicated here, there is nothing in the record to suggest the policy change was motivated by a desire to cause plaintiffs harm or was so egregious or outrageous as to constitute conscience-shocking behavior.  Plaintiffs do not identify anything to counter defendants' assertion that the policy change was a valid exercise of their financial and budgetary responsibilities.  There is no evidence whatsoever that defendants acted with the intent to oppress or cause injury to

---

[13] As noted above, plaintiffs fail to demonstrate a deprivation of their access to section 207-c medical benefits.  Thus, the substantive due process claim can be dismissed on that basis alone.  However, in the interest of completeness, the parties' remaining arguments regarding this claim will be addressed.

plaintiffs.

Accordingly, defendants' motion for summary judgment will be granted as to the substantive due process claim (Third Cause of Action), and this claim will be dismissed.

### E. Equal Protection Claim—(Fourth Cause of Action)

Plaintiffs allege that the new policy treats retired police officers differently than retired firefighters.  Defendants point out that the differences between the policies regarding police and fire personnel are the product of separate collective bargaining processes for the two groups.  They further argue that the use of the workers' compensation fee schedule to pay section 207-c benefits is rationally related to the legitimate government interest of conserving public funds.  Plaintiffs do not respond to these arguments.

Where, as here, an equal protection claim does not implicate a "suspect class" and involves economic interests, the governmental action is reviewed on a "rational basis" standard.  Benjamin v. Town of Fenton, 892 F. Supp. 64, 67 (N.D.N.Y. 1995) (Scullin, J.). This standard inquires whether the legislative action is "rationally related to a legitimate state purpose."  Id.  When considering an equal protection claim, defendants' stated objectives must be accepted as true "absent a factual showing by plaintiff that such objectives could not have been the real objectives."  Id. (internal quotation marks and alteration omitted).

Plaintiffs offer no evidence to support their assertion that disabled police officers are treated differently than disabled firefighters.  Indeed, in his January 30, 2012, Report–Recommendation, Judge Peebles noted that "the proof at the hearing was that the benefits to disabled City police officers and firemen are administered in the same way."  Vassenelli, 2012 WL 716187, at *9 n.16.  Even assuming, arguendo, that the City does treat retired

disabled police officers differently than firefighters, defendants' contention that the policy reflects an effort to save money defeats plaintiffs' claim.  As previously noted, there is nothing in the record to counter defendants' stated objective of saving money.  The reduction of payments made pursuant to section 207-c rationally advances the legitimate governmental interest of conserving public funds.

Accordingly, defendants' motion for summary judgment will be granted with respect to the equal protection claim (Fourth Cause of Action), and this claim will be dismissed.

### F.  Ninth Amendment Claim—(Fifth Cause of Action)

Plaintiffs attempt to assert a claim pursuant to the Ninth Amendment to the United States Constitution.  Defendants seek summary judgment on this claim, and plaintiffs do not respond in opposition.

The Ninth Amendment is often mentioned in discussions of fundamental rights, especially those not expressly mentioned in the text of the Constitution.  However, "[t]he Ninth Amendment is not an independent source of individual rights."  Jenkins v. Comm'r, 483 F.3d 90, 92 (2d Cir. 2007); see also Mann v. Meachem, 929 F. Supp. 622, 634 (N.D.N.Y. 1996) (McAvoy, C.J.) ("The Ninth Amendment is recognized as a rule of construction and does not protect any specific right.").

Accordingly, defendants' motion for summary judgment will be granted with regard to the Ninth Amendment claim (Fifth Cause of Action), and this claim will be dismissed.

### G.  New York State Constitutional Claim—(Sixth Cause of Action)

In the second amended complaint, plaintiffs do not specify which section(s) of the New York state constitution defendants have allegedly violated.  They instead group this claim

with the federal Ninth Amendment claim and allege that defendants violated the state constitution by interfering with their right to medical care and privacy.

In their response to the Syracuse defendants' motion for summary judgment, plaintiffs—for the first time—tie these allegations to the due process and equal protection clauses of the New York state constitution.  In particular, they discuss fundamental rights and liberty interests protected by the state constitution.  To the extent they now attempt to assert state substantive due process and equal protection claims, such claims will be dismissed for the same reasons their federal counterparts will be dismissed as outlined above.

Accordingly, defendants' motion for summary judgment will be granted with respect to the New York state constitutional claim (Sixth Cause of Action), and this claim will be dismissed.

### H.  <u>Section 1983 Conspiracy Claim—(Seventh Cause of Action)</u>

Plaintiffs allege that the Syracuse defendants and POMCO conspired to provide their healthcare providers with false and misleading information to "smear their reputation, minimize their medical needs, and . . . misrepresent Plaintiffs' status."  Second Am. Compl. ¶ 52.  They claim that the object of this conspiracy was to deprive them of services and treatment as well as to earn a profit for defendants.  Defendants argue that this claim is wholly conclusory and barred by the intra-corporate conspiracy doctrine.[14]

To succeed on their § 1983 conspiracy claim, plaintiffs must establish:  "(1) an

---

[14]  The intra-corporate conspiracy doctrine is inapplicable because plaintiffs allege that two separate entities—the Syracuse defendants and POMCO—conspired to deprive them of their constitutional rights.  <u>See Hartline v. Gallo</u>, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (noting that the intra-corporate conspiracy doctrine applies only where plaintiffs allege members of the same legal entity conspired together).  Nonetheless, a full analysis of this doctrine is unnecessary as defendants will be granted summary judgment on other grounds.

agreement between a state actor and a private party [or between two or more state actors];

(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages."  Ciambriello v. Cnty. of Nassau, 292 F.3d 307,

324–25 (2d Cir. 2002); see also Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

There is sufficient evidence in the record to establish that the City and POMCO

worked together in an effort to reduce the overall costs of section 207-c expenses by

lowering the payments to mirror the workers' compensation rates.  However, plaintiffs do not

identify any evidence that would permit a reasonable jury to conclude that defendants

engaged in concerted action with the intent to deprive them of their constitutional rights.

Therefore, plaintiffs "[have] not presented any evidence to support the inference of

impropriety," and this claim thus cannot survive defendants' summary judgment motions.

Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir.1998) (reiterating that "conclusory

allegations" or "unsubstantiated speculation" will not defeat summary judgment on a § 1983

conspiracy claim).

Accordingly, defendants' motion for summary judgment will be granted with respect to

the § 1983 conspiracy claim (Seventh Cause of Action), and this claim will be dismissed.

### I. Qualified Immunity

Finally, the individual defendants argue that they are all entitled to qualified immunity.

This argument is moot because, as detailed above, there are no genuine issues as to any

material fact regarding plaintiffs' constitutional claims.  See L.A. Cnty. v. Rettele, 550 U.S.

609, 616, 127 S. Ct. 1989, 1994 (2007) ("As respondents' constitutional rights were not

violated, there is no necessity for further inquiries concerning qualified immunity."  (internal

quotation marks omitted)).

Even if any of the constitutional claims survived the motion for summary judgment, the individual defendants would be entitled to qualified immunity.  Indeed, it was objectively reasonable for them to believe that following a City policy of paying section 207-c benefits at workers' compensation rates did not violate plaintiffs' constitutional rights.  See Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (a government actor is shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights").  As noted above, there is no evidence whatsoever that any of these defendants deprived plaintiffs of their constitutional rights or acted with the intent to cause them harm.

## IV.  CONCLUSION

There is sufficient evidence in the record to establish that POMCO's payment of section 207-c benefits is so entwined with the City's processing of the claims for such benefits that POMCO's conduct is fairly attributable to the state, making it a state actor for purposes of § 1983.

Mullen and Schmidt enjoy a constitutionally protected property interest in access to medical care that is medically necessary and related to their disabling injuries, as guaranteed by New York General Municipal Law section 207-c.  This property interest may not be terminated without appropriate pre-termination due process.  However, they fail to identify sufficient evidence in the record to establish a genuine issue of material fact as to whether their access to such medical care was actually cut off.  Nor is there any indication whatsoever of conscience-shocking conduct on defendants' behalf.

The record is similarly devoid of evidence that defendants conspired to deprive plaintiffs of their constitutional rights or intended to cause them harm.  Further, the reduction of payments made pursuant to section 207-c rationally advances the legitimate governmental interest in saving public funds, as asserted by defendants.  Finally, even if any of the constitutional claims were to survive the motion for summary judgment, the individually-named defendants are entitled to qualified immunity.

Therefore, it is

ORDERED that

1.  POMCO's motion for summary judgment (ECF No. 91) is DENIED to the extent it asserts a lack of state action;

2.  The Syracuse defendants' motion for summary judgment (ECF No. 92) is GRANTED in its entirety;

3.  All federal and state claims are DISMISSED on the merits with prejudice; and

4.  The Second Amended Complaint (ECF No. 51) is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly.


_____
United States District Judge

Dated:  August 5, 2013
        Utica, New York.